JAMES D. WILLIAMSON AND FRANK B. CARPENTER, EXECUTORS AND TRUSTEES, ESTATE OF EMMA D. FREEMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8003.    Promulgated August 8, 1927.

The claim of the petitioners that, under the provisions of the decedent's will, all of the income of an estate was payable to two income-tax-exempt charitable corporations as residuary legatees *held* not proven by the evidence submitted.

*H. A. Mihills, C. P. A.*, for the petitioners.
*D. D. Shepard, Esq.*, for the respondent.

This proceeding is for the redetermination of a deficiency in income tax for the year 1921 in the amount of $885.02. The error alleged on the part of the Commissioner is that he refused to exempt the income of the estate from income taxation.

### FINDINGS OF FACT.

Emma D. Freeman, a resident of the State of Ohio, died at Cleveland, Ohio, on December 28, 1919. Her will was probated January 5, 1920, and letters testamentary were issued to James D. Williamson and Frank B. Carpenter as executors upon the same date, and letters of trusteeship were issued to them on January 16, 1920. A certified copy of the will of Emma D. Freeman reads in part as follows:

ITEM TWENTY-FIVE. I give and bequeath to the Welfare Federation of Cleveland, Ohio, or to Its Successors in like or similar work, the sum of Fifty Thousand Dollars. It is my will that the income of said sum shall be paid annually as said Welfare Federation shall deem most helpful to the institutions or Organizations hereinafter named in this item of my Will or as hereinafter in this Item provided and in such proportions to each of said Institutions as said Federation shall in the exercise of its best judgment deem wise. In determining such annual distributions the officers, Trustees or Board of Directors of said Federation shall give careful consideration thereto and shall pass upon such distribution. The Institutions to be aided under this provision of my Will are hereinafter enumerated, to-wit: and are all institutions of the City of Cleveland, Ohio.

\*        \*        \*        \*        \*        \*        \*

If in the best judgment of the officers and trustees of said Welfare Federation some of the income of said bequest should be used for the help of charitable organizations other than those enumerated above; it is hereby given full power and authority to make such other or further distribution of the income as it concludes to be wise and most helpful. In determining such questions however, I ask the officers of said Federation to consider that I am especially interested in the care and help of poor children.

The fact that any organization may not be incorporated shall not be a bar to its receiving help under this item of my Will.

ITEM TWENTY-SIX. It is my Will that my Executors and Trustees hereinafter named shall pay the annuities provided in this item of my Will, in the amounts,

to the persons, and upon the conditions herein stated, and only upon such conditions.

Such annuities shall be paid annually during the natural life of each annuitant and beginning one year after the date of the probate of my Will. The persons who are to receive said annuities are as follows, and to amounts to be paid are those set after their respective names:

To Edward F. Gilbert, the sum of two hundred dollars per annum.

To Mrs. R. M. Lowry, the sum of two hundred dollars per annum.

The present addresses of the two annuitants last above named are either Lancaster, New York or Lyons, New York.

To Mrs. Lou Gilbert Shepherd of Lyons, New York, the sum of two hundred dollars per annum.

\*    \*    \*    \*    \*    \*    \*

ITEM TWENTY-NINE. It is my will that five years after the probate of this my Will, there shall be paid by my Executors to each of the *individual* persons who are legatees hereinbefore named in any of the foregoing items of my Will who are related by blood to me, if then living, and if not, to their respective heirs, an amount equal in each case to the legacy first hereinbefore provided to be paid to each of them. The further distribution provided in this item of my Will is not intended, however, to increase or repeat any of the annuities hereinbefore provided, and has no connection with them.

ITEM THIRTY. It is my Will that ten years after the probate of this, my Will, there shall further be paid by my Executors to each of the *individual* persons who are legatees hereinbefore named in any of the foregoing items of my Will who are related by blood to me, if then living, and if not, to their respective heirs, an amount equal in each case to the legacy first hereinbefore provided to be paid to each of them. The further distribution provided in this item of my Will is not intended however, to increase or repeat any of the annuities hereinbefore provided and has no connection with them.

The distribution and payments provided to be made under this item of my Will and also under the preceding Item number twenty-nine hereof, are not intended to repeat or increase in any way the bequests to *Institutions*, as provided in this my Will. The additional distributions of such items are only to be made to individual *persons* related by blood to me.

\*    \*    \*    \*    \*    \*    \*

ITEM THIRTY-TWO. All the rest, residue and remainder of my estate, both real and personal, wherever situated, I give, devise and bequeath to my Executors and Trustees hereinafter named, *in trust*, however, for the following uses and purposes, and as hereinafter stated. And in case of the trusts herein confided to my Executors and Trustees cease from any cause whatever, then I give, devise and bequeath the same to their successors in this trust, to be used, controlled, invested and disposed of as hereinafter provided: hereby giving my Executors and Trustees herein named, and to their successors in the trust hereby created, full, ample, and complete power and authority to sell, convey, manage, direct, control, rent or improve the same, and every part thereof, as well as the proceeds from the income therefrom according to their own judgment and discretion  \*  \*  \*.

I also hereby authorize and empower my Executors and Trustees herein named, and their successors in this trust to dispose of, whenever they deem it for the best interest of my estate so to do, any and all my personal property  \*  \*  \*  and to invest  \*  \*  \*  in such manner and in such property as they deem best, the proceeds arising therefrom  \*  \*  \*.  It being my purpose and intention to empower and invest my Executors and Trustees herein

named, and their successors with full power to manage and control as herein expressed my entire estate, according to their best judgment and discretion, the same as I could do, if living.

\*        \*        \*        \*        \*        \*        \*

ITEM THIRTY-THREE. Ten years after the probate of my Will, my Executors and Trustees shall make further and partial distribution of my estate in the following manner, to-wit:

They shall retain the sum of Fifty Thousand Dollars, and as Trustees of "The George Freeman Charity Fund" to which Trusteeship they are hereby appointed, they shall expend annually the net income from said sum of Fifty Thousand Dollars, for the benefit of the poor children of the City of Cleveland, Ohio, in such manner, as in the exercise of their best judgment, or the best judgment of the survivor, seems most useful and desirable. Said trust shall be known as "The George Freeman Charity Fund", and same is created in loving memory of my late husband. Said trust shall be administered as aforesaid by the said James D. Williamson and Frank B. Carpenter, or the survivor of them, as long as they or either of them shall live, and be able to serve as such Trustees. They or either of them, upon the death or inability of the other to serve shall have the same full and complete power and authority over said trust fund  \*  \*  \*.

Upon the death or inability to serve of both said Trustees, said trust fund, and any accumulations thereof shall be paid over to and transferred to The Cleveland Trust Company of Cleveland, Ohio, which shall thereafter administer said trust.

I direct that the entire net income derived from said fund or trust estate with its accumulations, if any, shall be annually expended or appropriated perpetually, until the principal may have been disbursed for charitable uses and purposes set forth in a resolution adopted by the Board of Directors of The Cleveland Trust Company on the second day of January, 1914, providing for a community charitable trust designated in said resolution as the "Cleveland Foundation." I further direct that said trust estate or fund, after the death of James D. Williamson and Frank B. Carpenter, both principal and income shall thereafter vest in The Cleveland Trust Company and be managed, controlled, administered and disbursed in all respects as provided in said resolution.

ITEM THIRTY-FOUR. All the rest, residue and remainder of my estate, both real and personal wherever situated, except the sum of One Hundred Thousand Dollars, I give, devise and bequeath as follows:

One-half thereof to The Cleveland Chapter of the Red Cross, for its appropriate uses and purposes, preferably for hospital work, and the remaining one-half thereof to the Welfare Federation of Cleveland, Ohio, for its appropriate uses and purposes. But said bequests shall not be paid by my Executors to said The Cleveland Chapter of the Red Cross and the said Welfare Federation of Cleveland until ten years after the date of the probate of my Will, at which time such payment shall be made.

ITEM THIRTY-FIVE. If for any reason the foregoing bequests to institutions or any of them shall fail or become void, then the amount thereof shall be distributed at the times, and in the manner provided by the statutes of descent and distribution of the State of Ohio, without any restrictions thereon, express or implied by virtue of this my Will.

ITEM THIRTY-SIX. The sum of One hundred thousand dollars hereinbefore reserved, after making distribution as provided in Item Thirty-four shall be held *in trust*, by my Executors and Trustees for the following uses and purposes, for the term of twenty-one years *after my decease.*

My said Executors and Trustees shall pay one-half of the net income thereof to my nephew, George F. Fellows, or his heirs during said period of twenty-one years, and the remaining one-half of said net income to my nephew, Frank L. Fellows, or his heirs during said period of twenty-one years. Such payments to my said nephews of such net income shall be in quarterly *instalments* or otherwise, as my Executors may think best. It is my wish that said income so distrtibuted shall be used for the education of the families of my said nephews or other useful purposes.

My Executors are further authorized and empowered to pay from the principal sum of which my nephews or their heirs are to derive the income, such other sums as from time to time they may deem necessary or desirable to meet any emergencies which may arise causing a real need for extra money by my said nephews, or, after their death, by their heirs. Any such payments shall, if made at all from the principal, be at such times and under such conditions as my Executors and Trustees deem wise. All matters relating to such payments, I leave to the good judgment and discretion of my Executors and Trustees, and their successors to do or not to do as they deem best under all the circumstances. Any receipts of said nephews or either of them, or their heirs, after their death for any payments made to them, shall be good and valid vouchers to my Executors and Trustees or their successors for the amount so paid to them in the final settlement of my estate.

ITEM THIRTY-SEVEN. Twenty-one years after my decease, I give, devise and bequeath one-half of the amount of said Trust Fund of One Hundred Thousand Dollars, then remaining in the hands of my Executors and Trustees to my nephew, George F. Fellows and his heirs, and one-half thereof to my nephew, Frank L. Fellows, and his heirs.

A committee of three was appointed by the Probate Court of Cuyahoga County, Ohio, to appraise the assets of the Estate of Emma D. Freeman for probate court purposes as at December 28, 1919, the date of her death. This committee consisted of the private secretary to Frank B. Carpenter and two bankers of the City of Cleveland. They inventoried the assets of the estate and valued them as follows:

| | |
|---|---:|
| Stocks and bonds | $741, 846. 85 |
| Personal effects | 2, 022. 50 |
| Cash in bank | 9, 893. 12 |
| Total value of estate | 753, 762. 47 |

The value of stocks and bonds was taken from published sales of securities listed on the New York Stock Exchange, New York Curb, Cleveland Stock Exchange and Chicago Stock Exchange, and those securities which were not listed on any of these exchanges were appraised by the two bankers, who were members of the appraisal committee. This valuation was used for both probate court and Federal estate-tax purposes.

The will provides for the payment of specific legacies amounting to $212,719, payable as follows: $149,719 immediately; $31,500 five years after probate, and $31,500 ten years after probate. It also

provides for the payment of certain annuities, the prospective total amount payable from January 1, 1921, to the annuitants, based on expectancy tables, being $118,237, as shown below:

| Name | Age | Expectancy of life in years | Annuity | Prospective total payments |
|---|---|---|---|---|
| Mrs. R. M. Lowry | 51 years | 20.20 | $200 | $4,040 |
| Mrs. Lou Gilbert Shepherd | 52 years | 19.49 | 200 | 3,898 |
| George F. Fellows | 62 years | 12.86 | 500 | 6,430 |
| Mrs. G. F. Fellows | 55 years | 17.40 | 500 | 8,700 |
| Frank L. Fellows | 59 years | 14.74 | 500 | 7,370 |
| Mrs. F. L. Fellows | 54 years | 18.09 | 500 | 9,045 |
| Edward Fellows | 28 years | 36.73 | 200 | 7,346 |
| Leah Fellows | 23 years | 40.17 | 200 | 8,034 |
| Keokee Fellows | 20 years | 42.20 | 200 | 8,440 |
| Harriett Fellows | 18 years | 43.53 | 200 | 8,706 |
| Jack Fellows | 15 years | 45.51 | 200 | 9,102 |
| Ethel Fellows | 32 years | 33.92 | 200 | 6,784 |
| Laura Fellows | 30 years | 35.33 | 200 | 7,066 |
| Will Fellows | 28 years | 36.73 | 200 | 7,346 |
| Helen Fellows | 26 years | 38.12 | 200 | 7,624 |
| Howard Fellows | 21 years | 41.53 | 200 | 8,306 |
| Total | | | | 118,237 |

With respect to "The George Freeman Charity Fund" and the residuary estate, there was no segregation of either corpus or income of the estate, nor were any accounts set up on the books of the estate relative thereto. The $100,000 bequest to the "Fellows Trust Fund" was set up separately on the books of account of the estate some time during the year 1921. An account was opened in the name of each of the legatees who were to receive immediate legacies and in the name of each of the annuitants, but only the amounts paid to the annuitants were entered in their accounts.

The total amount of specific legacies, including the two trust funds and the prospective amount payable as annuities, provided for in the will is $480,956. After the settlement of estate debts and expenses, losses on realization of securities and other minor adjustments of the accounts of the estate, there remained at December 31, 1926, $386,327.08 of the corpus of $753,762.47 which existed at December 28, 1919.

The book value of the assets of the estate as at December 31, 1920, and December 31, 1921, was $749,375.01 and $533,694.18, respectively. The book value of the assets of the estate as at December 31, 1926, was $593,141.33 and the market value thereof as at January 20, 1927, as determined from quotations of the New York Stock Exchange, New York Curb, Cleveland Stock Exchange and local investment houses, was $693,990.76. The following statements taken from the books of the estate show the condition of the estate as at December 31, for the years 1920, 1921, and 1926:

*December 31, 1920.*

| | | | |
|---|---|---|---|
| Cash in bank | $37, 028. 04 | Corpus | $752, 054. 35 |
| Inventory | 749, 375. 01 | Less estate debts and expenses | 13, 679. 83 |
| | | | 738, 374. 52 |
| | | Corpus gain | 459. 22 |
| | | | 738, 833. 74 |
| | | Income | 47, 569. 31 |
| | 786, 403. 05 | | 786, 403. 05 |

*December 31, 1921.*

| | | | |
|---|---|---|---|
| Cash in bank | $37, 198. 67 | Corpus | $536, 103. 21 |
| Inventory | 533, 694. 18 | Less estate debts and expenses | 29, 058. 18 |
| | | | 507, 045. 03 |
| | | Less loss on realization | 14, 962. 74 |
| | | | 492, 082. 29 |
| | | Income | 78, 810. 56 |
| | 570, 892. 85 | | 570, 892. 85 |

*December 31, 1926.*

| | | | |
|---|---|---|---|
| Cash in bank | $7, 894. 72 | Corpus | $446, 865. 72 |
| Inventory–securities | 593, 141. 33 | Less estate debts and expense | 48, 004. 80 |
| | | | 398, 860. 92 |
| | | Less loss on realization | 12, 533. 84 |
| | | | 386, 327. 08 |
| | | Income _____ $237, 382. 04 Less expenses ____ 22, 673. 07 | 214, 708. 97 |
| | 601, 036. 05 | | 601, 036. 05 |

The Cleveland chapter of the American Red Cross and the Welfare Federation of Cleveland were specific legatees under the will, as well as residuary legatees, and payments on account of the specific legacies were made to each of them during the year 1921.

OPINION.

SMITH: The issue in this appeal is whether or not the estate of Emma D. Freeman is liable to income taxation on its net income for the year 1921.

The position of the petitioners with respect to the question before us is that the total amount of legacies, both immediate and future, as provided in the will of Emma D. Freeman, was less than the

amount of corpus at the date of her death, and that, under the provisions of her will, all of the residue of her estate, both corpus and income, was payable in equal portions to the Cleveland chapter of the American Red Cross and the Welfare Federation of Cleveland, a trust having been created under which payment was to be made to the residuary legatees ten years from date of probate of the will, which was on January 5, 1920.

The petitioners contend (1) that since the amounts payable out of the corpus of the estate necessary to pay the specific legacies and the annuities (based upon recognized expectancy tables), and to establish the two trust funds of $50,000 and $100,000 are, in the aggregate, less than the amount of corpus at the date of death, all the income of the estate becomes part of the residuum payable ten years from the date of probating the will to two charitable organizations as residuary legatees; (2) that each of the residuary legatees is an organization exempt from income taxation; and (3) that, therefore, the income of the estate for the year 1921 was not subject to income tax.

The respondent admits that the American Red Cross is an organization exempt from income taxation and that the Welfare Federation of Cleveland is a corporation apparently engaged in social welfare work, but denies in his answer that the latter organization is exempt from income taxation. He contends that the income of the estate was not " paid or permanently set aside " within the meaning of section 219 (b) of the Revenue Act of 1921, and that such income is taxable to the estate as to a single individual.

The trust created under item 32 of the will is not a corporation or a community chest, fund or foundation. Neither is it an association. It is an ordinary trust and as such trust does not fall within the following provisions of section 231 of the Revenue Act of 1921:

SEC. 231. That the following organizations shall be exempt from taxation under this title—

\*        \*        \*        \*        \*        \*        \*

(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual.

Consequently, if the income of the estate is exempt from taxation such exemption will be pursuant to the provisions of section 219 of the Revenue Act of 1921, which are, in part, as follows:

SEC. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income received by estates of deceased persons during the period of administration or settlement of the estate;

(2) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests;

(3) Income held for future distribution under the terms of the will or trust; and

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

(b) The fiduciary shall be responsible for making the return of income for the estate or trust for which he acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except that (in lieu of the deduction authorized by paragraph (11) of subdivision (a) of section 214) there shall also be allowed as a deduction, without limitation, any part of the gross income which, pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in paragraph (11) of subdivision (a) of section 214. * * *

The pertinent provisions of section 214 of the Revenue Act of 1921 are:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

*        *        *        *        *        *        *

(11) Contributions or gifts made within the taxable year to or for the use of: * * * any corporation, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual; * * *

The Welfare Federation of Cleveland was incorporated, not for profit, under the laws of Ohio on January 13, 1917. It is a central planning body composed of over 100 charitable and social welfare agencies of the City of Cleveland, the majority of which receive support through it from the Cleveland Community Fund. It has no stockholders, the corporate body being the general board, which is composed of two representatives from each member agency. The powers, business and property of the Federation are exercised, conducted and controlled by the board of trustees, the members of which are elected by the general board. Its activities comprise the planning and correlating of the work done by the various member agencies and the budgeting of the income of the agencies and the annual appropriations made to them by the Cleveland Community Fund. Certain services which are common to all agencies such as publicity, accounting and bookkeeping, mimeographing, housing, etc., are centralized in the Welfare Federation.

It is authorized by its charter to receive and hold funds or real property, in trust or otherwise, whether given by will, gift, or otherwise, and to distribute the same among such organizations as may be deemed best, or to make such other use thereof or engage in such other activities as may be deemed in the general interest of charity

and education in Cleveland and its vicinity. The regulations of the Welfare Federation provide that only such organizations shall be considered eligible to financially participating membership as are justified in making an appeal for funds to the general public and not merely to a restricted constituency of support limited to religious, denominational or other special affiliations. No organization is admitted to membership unless it can demonstrate that it fills a need not already well filled or capable of being thus filled by an existing agency. Propaganda organizations in the field of controversial questions and organizations which recommend in favor of or against the election of individual candidates to political office are not admitted to membership.

In our opinion the Welfare Federation of Cleveland is exempt from taxation under the above quoted provisions of section 231 of the Revenue Act of 1921.

The only remaining question involved is whether the income received by the estate was paid or permanently set aside for charitable purposes within the meaning of the Act. Counsel for the respondent argued that no part of the income of the estate was paid or credited to the residuary legatees; that the date of payment of the residuum is uncertain and in the future; that the corpus and accumulations may be depleted to such an extent that there is nothing left to distribute or to pay over to the exempt corporations; and that the income could not be appropriated and dedicated finally and for all time to charitable uses, as specified in section 214 (a) (11), so that thereafter there will be no change which would destroy the character of such action because such action could not be taken for a number of years and because contingencies resulting from other items of the will might divert the accumulated income and the corpus from the residuary legatees.

Counsel for the petitioners argued that since the corpus of the estate at the time of the death of the testatrix was greatly in excess of the aggregate amount of legacies provided for in the will, the entire income of the estate passed to the residuum and as such became payable to the two designated charities ten years after the will was probated. In support of his argument he shows that the will provided for the payment of specific legacies, annuities, and the establishment of two trust funds aggregating $480,956, leaving a residuum of $272,806.47, based on a valuation of the corpus of the estate as of date of death of $753,762.47, said valuation having been used both for probate court and Federal estate-tax purposes. Corroborative evidence was presented showing that the earnings of the estate for each year subsequent to the date of death were more than

sufficient to pay expenses of administration and that on December 31, 1926, the book value of the corpus was $386,327.08, subject to the payment of legacies, annuities and the establishment of the $50,000 trust fund aggregating $174,337, leaving a book value of the remaining corpus alone amounting to $211,990.08. The book value of the residuum, including corpus and income, as at December 31, 1926, was $408,804.33 and the market value thereof as at January 20, 1927, was $519,653.76.

We are not convinced, however, that all of the income of the estate became part of the residuum in view of the provisions of items 34 and 36 of the will. Under those items, a trust with a principal of $100,000 was created immediately which was to exist for twenty-one years after the death of the testatrix. The income of said trust was to be divided equally between two nephews of the decedent and was to be distributed to them in quarterly installments, or at the discretion of the executors and trustees, who were also empowered to distribute from the principal of the trust such other sums as they might deem necessary or desirable. At the expiration of the twenty-one-year period, the then remaining principal was to be divided equally between the two nephews. Although it appears that this trust fund was set up separately on the books of account during or at the close of the year 1921, no evidence was presented to show that no part of the income claimed by the respondent to have been received by the estate in 1921 was received upon such trust fund. So far as appears the whole estate was considered an entity prior to the creation of the Fellows Trust Fund and the income of the estate, after the payment of expenses, was invested and added to the remaining corpus.

It results, therefore, that the contention of the petitioners that all the income of the estate became part of the residuary estate and as such was ultimately payable to the Cleveland chapter of the American Red Cross and the Welfare Federation of Cleveland can not be sustained. Even if it be conceded that that portion which did pass to the residuary estate would be deductible as having been paid or permanently set aside for the use of two exempt charitable corporations, we could not, from the evidence submitted, decide what portion, if any, could be deducted.

The facts in this case are essentially different from those which obtained in *Appeal of Herbert Jermain Slocum*, 6 B. T. A. 36; *Bowers* v. *Slocum*, 20 Fed. (2d) 350. There it appeared that it was the duty of the executors, pursuant to the terms of the will, to pay to the residuary legatees or permanently set aside for them the income upon the residuary fund. In the case at bar there is no

evidence that any part of the income of the estate during 1921 was paid to or permanently set aside for the residuary legatees.

*Judgment will be entered for the respondent.*

Considered by LITTLETON.